IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD SCOLLINS, | ) |
| Plaintiff, | ) |
| v. | ) No. 03-12478-EFH |
| SENTIENT, fka eBizJets, a Delaware Corporation | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Pursuant to Rule 15(a), Federal Rules of Civil Procedure, Plaintiff Donald Scollins ("Scollins") hereby moves this Court for an order granting leave to Scollins to amend his complaint. This is Plaintiff's first request, and would be the first amendment to the complaint. A copy of the proposed First Amended Complaint is attached hereto and incorporated herein by reference as Exhibit "A".

Rule 15 clearly states that "...leave shall be freely given when justice so requires." Here, Scollins respectfully seeks to add two additional causes of actions to the complaint based upon recent discovery, particularly witness deposition testimony.

### A.   UNJUST ENRICHMENT.

First, Scollins seeks to add an unjust enrichment claim against Defendant Sentient ("eBizJets") for unpaid advertising services. During the deposition of John Williams, a

former Defendant and Officer of eBizJets, certain facts came to light that justify such an amendment. Mr. Williams testified during his deposition that when he was hired by eBizJets, he was aware that Scollins was placing print and directory advertisement for eBizJets. (See Deposition of John Williams 25:11-17). Mr. Williams also admitted he knew at some point that Scollins was placing advertisement through a separate company. (See Deposition of John Williams 26:12-14).

Further, two documents maintained or created by eBizJets contained the name of Scollin's advertising company, Bottom Line Advertising. First, was a company directory. Second, was the Mutual Termination Agreement ("Agreement") presented by eBizJets to Scollins. The Agreement specifically stated, "Scollins is an employee of the company and also owns or controls an entity that has done advertising business with the company."

Defendant contends there was no contract between Scollins and Defendant requiring Defendant to pay Scollins for advertising services. Yet, discovery has revealed Scollins performed the services. As this Court knows, unjust enrichment is simply a doctrine of quasi-contract when no written contract applies. Unjust enrichment has been used to address the "unjust enrichment of one party and unjust detriment to the other party" Bushkin Assocs., Inc. v. Raytheon Co., 906 F.2d 11, 15 (1st Cir. 1990).

In this case, it is clear that Scollins did advertising work for eBizJets. Scollins' efforts resulted in a very real savings and discount for eBizJets. Scollins put in real hours and work. Thus, in light of Mr. Williams' acknowledgment that Scollins did perform this

work, a claim for unjust enrichment is appropriate.

**B.   WAGE CLAIM.**

Scollins also seeks to add a claim for unpaid wages pursuant to Mass. Gen. Laws Ch. 149, § 148. As paragraphs 8, 9, 10, and 17, and Counts 1, 2, and 3 of the Complaint show, Scollins has made a claim for the value of his vested stock options as of the date of his termination.

In Massachusetts, the issue is still open as to whether stock options are "wages" as defined under the Wage Act. See *Brown v. Nortel*, 14 Mass.L.Rptr. 544 (Mass.Super. 2002). In the *Brown* case (which is an unpublished decision), the Court refused to dismiss a wage claim for stock options on the defendant's motion to dismiss. The court ruled that it was premature to make a ruling as to whether stock options were wages, then went on to say:

> "If this Court was the trial judge, I would let the issue go to the jury, reserving the right to take the decision away after the verdict." *Id.*

WHEREFORE, Scollins respectfully requests this Court:

1. Enter an order granting Plaintiff's Motion for Leave to Amend Complaint; and

2. Grant Plaintiff such other relief as this Court deems just and proper.

. . .

. . .

RESPECTFULLY SUBMITTED this 23 day of November, 2004.

PARKER LAW FIRM, P.L.C.

By: _____
John D. Parker, II, *Pro Hac Vice*
Anthony E. Young, *Pro Hac Vice*
141 E. Palm Lane, Suite 111
Phoenix, AZ 85082-3098
(602) 257-81007

-and-

Edward C. Cooley, BBO #550117
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
308 Victory Road
Quincy, MA. 02171
(617) 770-2900

*Attorneys for Plaintiff Donald Scollins*

## CERTIFICATE OF SERVICE

I, John D. Parker, II, hereby certify that on this 23 day of November, 2004, I caused copies of **PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT** to be served by first-class mail, postage pre-paid addressed to Max C. Perlman, Esq., Sullivan, Weinstein & McQuay, P.C., Two Park Plaza, Suite 610, Boston, MA 02116-3902 (Attorneys for Defendant).

_____
John D. Parker, II

K:\978\021377\leave-amend.mot

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD SCOLLINS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 03-12478-EFH ) |
| SENTIENT, fka eBizJets, a Delaware corporation, | ) ) |
| Defendants. | ) ) |

## FIRST AMENDED COMPLAINT

For his cause and First Amended Complaint against Sentient, fka eBizJets, a Delaware corporation ("eBizJets"), Plaintiff, Donald Scollins ("Scollins" or "Plaintiff"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Mr. Scollins was and now is an Arizona resident. Mr. Scollins is also the owner and operator of Bottom Line Advertising, a sole proprietorship with its principal place of business in Arizona.

2. Upon information and belief, eBizJets was a Delaware corporation, and a luxury charter aircraft company. On September 1, 2002, eBizJets changed its name to Sentient. Sentient is a privately held portfolio company of CSFB Private Equity, the private investment arm of Credit Suisse Group. Upon information and belief, eBizJets and

Sentient were both qualified to transact business in the State of Arizona.

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1332(a) and (c).

5. Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (c).

## GENERAL ALLEGATIONS

6. Prior to the commencement of this action, eBizJets hired Mr. Scollins as a Director of Charter Operations, based, in part, on his sales experience. Mr. Scollins was paid a salary, plus performance based bonuses and stock options.

7. Mr. Scollins and eBizJets mutually agreed in writing to abide by eBizJets' policies and procedures applicable to its employees, including eBizJets' promise to apply progressive discipline.

8. Mr. Scollins' performance as eBizJets' Vice President-Flight Operations exceeded company expectations. To reward Mr. Scollins for his performance, eBizJets granted him 280,412 stock options at an exercise price of Fifty Cents ($0.50) per share on November 8, 2000. The vesting date for the options commenced on February 22, 2001.

9. In connection with the grant of his performance-based stock options, Mr. Scollins signed a Stock Option Agreement-Incentive Stock Option ("Stock Option Agreement.") The Stock Option Agreement provided that Mr. Scollins would forfeit his stock options if he were terminated from eBizJets for "cause," as determined by the Board of Directors. Otherwise, Mr. Scollins could exercise his options to buy shares pursuant

to the procedures outlined in the Stock Option Agreement.

10. On September 19, 2001, Mr. Williams recommend to the Board of Directors that Mr. Scollins receive an additional 1,000 stock options as a result of Mr. Scollins' exemplary job performance following the September 11th terrorist attacks. The recommendation was approved by the Board of Directors.

11. Mr. Scollins also entered into a contract with eBizJets on behalf of his advertising agency, Bottom Line Advertising ("Advertising Placing Agreement"). Under the contract, eBizJets agreed to pay Bottom Line Advertising for monitoring, handling and placement of eBizJets' print advertisements in *The Wall Street Journal*, *Flying Magazine*, and several other publications. eBizJets agreed that Bottom Line Advertising would be billed directly, which saved eBizJets the standard 15% in advertising expenses each month. eBizJets also agreed that Mr. Scollins would be paid the 15% savings in advertising expenses after either (a) the company was sold, (b) the company's stock went public, or (c) Mr. Scollins ceased to work at eBizJets. These savings equated to approximately $360,000.00.

12. On November 13, 2001, Mr. Scollins took vacation. During Mr. Scollins' absence, eBizJets decided to terminate his employment.

13. On November 23, 2001, Mr. Scollins was called into a meeting with Mr. Williams, Carol Caliendo, eBizJets' Human Resource Director, and others. Mr. Scollins was unaware that eBizJets had already decided to terminate his employment and had

prepared a "Mutual Termination Agreement" ("Severance Agreement") prior to the meeting. During the meeting, Mr. Williams accused Mr. Scollins of a number of violations of company policies, each of which Mr. Scollins provided an explanation for. Regardless of the fact that Mr. Scollins had detailed the issues presented, Mr. Scollins was told he was being terminated and was immediately handed the Severance Agreement.

14. When Mr. Scollins asked why he was being terminated, Mr. Williams assured him - **three times** - that the termination was "without cause." Mr. Williams also stated that Mr. Scollins was to immediately relinquish all company property. Mr. Williams assured Mr. Scollins that the matter would remain confidential, and that Mr. Scollins could propose changes to the Severance Agreement.

15. Despite the promise of confidentiality, within two hours of the conclusion of the meeting, Jack Lambert, an e-EBizJet employee, told ExecuJet, one of eBizJets' carriers, that Mr. Scollins had been "fired."

16. All parties operated under the assumption that Mr. Scollins' November 23, 2001, termination was "without cause." However, on January 11, 2002, the Board of Directors held a special meeting to discuss Mr. Scollins' termination. On January 15, 2002, at approximately 5:30pm, Mr. Williams informed Mr. Scollins that the termination had been changed from "without cause" to "with cause." When Mr. Scollins again inquired as to why he was being terminated, Mr. Williams stated that he did not have to give a reason, nor was he required to allow Mr. Scollins to defend himself.

17. On January 16, 2002, Mr. Scollins received a certified letter stating that the Board of Directors had decided to terminate him for "cause, pursuant to Section 4(b) of the Stock Option Agreement" entered into in November, 2000. As a result, Mr. Scollins' opportunity to exercise his stock options had been terminated at 5:00pm the previous day.

## COUNT ONE
### Breach of Contract

18. Plaintiff re-alleges and re-affirms all allegations previously set forth in Paragraphs 1 through 17 as though fully set forth and re-alleged herein.

19. Mr. Scollins and eBizJets mutually agreed to abide by eBizJets' policies and procedures, including eBizJets' promise to apply progressive discipline. Said policies and procedures constituted an implied contract between Mr. Scollins and eBizJets.

20. Mr. Scollins performed all of his obligations under the terms of his implied contract with eBizJets.

21. In violation of its implied contract with Mr. Scollins, eBizJets terminated him and failed to progressively discipline him without any notice or opportunity to defend himself.

22. eBizJets breached the Advertising Placing Agreement by failing and refusing to pay Mr. Scollins the standard 15% it saved by using Bottom Line Advertising for company advertisement when Mr. Scollins ceased working at eBizJets.

23. eBizJets breached the Stock Option Agreement it had with Mr. Scollins, by

wrongfully terminating him for "cause," and depriving him of his vested rights under the Stock Option Agreement.

24. As a result of eBizJets breaching its implied employment agreement, the Stock Option Agreement, and the Advertising Placing Agreement, Mr. Scollins has suffered significant damage.

25. Since this matter arises out of contract, and pursuant to Massachusetts law, Mr. Scollins is entitled to recover from eBizJets his reasonable pre-judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered.

WHEREFORE, Plaintiff prays for Judgment against Defendant eBizJets as follows:

a. For Plaintiff's lost compensation and non-reimbursed business and moving expenses as a result of the wrongful termination of employment in an amount to be determined at trial, but upon information and belief in excess of $75,000.00, plus interest thereon at the rate allowable by law, from the date of judgment until paid;

b. For the cash savings realized by eBizJets under the Advertising Placing Agreement in an amount to be determined at trial, but upon information and belief in excess of $360,000.00, with interest thereon at the rate allowable by law, from the date of judgment until paid;

c. For the value of Plaintiff's vested stock options at the time of his termination, in an amount to be determined at trial, but upon information and belief in excess of

$92,000.00, with interest at the rate allowable by law;

    d.    For Plaintiff's reasonable pre-judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered; and

    e.    For such other and further relief as this Court may deem just and proper.

## COUNT TWO
## Breach of Covenant of Good Faith and Fair Dealing

26.    Plaintiff re-alleges and re-affirms all allegations previously set forth in Paragraphs 1 through 25 as though fully set forth and re-alleged herein.

27.    Mr. Scollins' agreements with eBizJets included a reciprocal covenant of good faith and fair dealing.

28.    The covenant of good faith and fair dealing in the parties' agreements obligated both parties to take no action that would impair or would be inconsistent with the parties' reasonable expectations of benefits available under the agreements and further obligated both parties to take affirmative actions reasonably contemplated by the parties so as to bring about conditions necessary for the parties to receive the reasonably anticipated benefits of each agreement.

29.    eBizJets violated the covenant of good faith and fair dealing in each of these agreements by (i) failing to apply progressive discipline, (ii) failing to pay Bottom Line Advertising the 15% discount due under the Advertising Placing Agreement when Mr.

Scollins was terminated, and (iii) wrongfully claiming Mr. Scollins was terminated for "cause" so as to deprive him of his vested stock options under the Stock Option Agreement.

30. As a result of eBizJets' breach of this covenant, in each agreement, Plaintiff suffered damages, along with mental anguish and distress, which subsequently resulted in physical injury.

31. Because eBizJets' breach of the covenant of good faith and fair dealing in each agreement constitutes outrageous conduct, Plaintiff seeks punitive damages as against eBizJets.

WHEREFORE, Plaintiff prays for Judgment against Defendant eBizJets as follows:

a. For Plaintiff's lost compensation and non-reimbursed business and moving expenses as a result of the wrongful termination of employment in an amount to be determined at trial, but upon information and belief in excess of $75,000.00, plus interest thereon at the rate allowable by law, from the date of judgment until paid;

b. For the cash savings realized by eBizJets under the Advertising Placing Agreement in an amount to be determined at trial, but upon information and belief in excess of $360,000.00, with interest thereon at the rate allowable by law, from the date of judgment until paid;

c. For the value of Plaintiff's vested stock options at the time of his termination, in an amount to be determined at trial, but upon information and belief in excess of

$92,000.00, with interest at the rate allowable by law;

d.  For punitive damages in an amount to be determined at trial, sufficient to punish Defendant eBizJets and deter future conduct; and

e.  For such other and further relief as this Court may deem just and proper.

## COUNT THREE
### Unjust Enrichment

32. Plaintiff re-alleges and re-affirms all allegations previously set forth in Paragraphs 1 through 31 as though fully set forth and re-alleged herein.

33. Plaintiff conferred a benefit on Defendant by providing advertising services for Defendant, said benefit being the savings of approximately $360,000.00 in advertising costs.

34. Despite demand for payment having been made, Defendant has failed to pay the amounts due, and there remains due and owing to Plaintiff the sum of $360,000.00, with interest thereon at the legal rate according to proof.

35. Defendants will be unjustly enriched if Plaintiff is not paid in full for the services rendered to Defendants and/or for Defendants' benefit.

36. Defendant is therefore indebted to Plaintiff in an amount to be determined at trial, but upon information and belief in excess of $360,000.00 with interest thereon at the legal rate according to proof.

37. Further, Plaintiff is entitled to recover from eBizJets his reasonable pre-

judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered

WHEREFORE, Plaintiff prays for Judgment against Defendant eBizJets as follows:

a. For the cash savings realized by eBizJets under the Advertising Placing Agreement in an amount to be determined at trial, but upon information and belief in excess of $360,000.00, with interest thereon at the rate allowable by law, from the date of judgment until paid;

b. For Plaintiff's reasonable pre-judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered; and

c. For such other and further relief as this Court may deem just and proper.

## COUNT FOUR
### Wage Claim - Mass. Gen. Laws ch. 149 § 148 and 150

38. Plaintiff re-alleges and re-affirms all allegations previously set forth in Paragraphs 1 through 37 as though fully set forth and re-alleged herein.

39. Plaintiff received his stock options as part of his compensation.

40. Plaintiff has suffered damages due to Defendant's breach of its promise and/or the change by Defendant for Plaintiff's termination from "without cause" to "with cause," causing him not to be able to exercise his stock options.

41. Defendant is therefore liable to Plaintiff for treble the amount of the value of

Plaintiff's vested stock options at the time of his termination, said amount to be determined at trial, but upon information and belief in excess of $92,000.00, with interest at the rate allowable by law.

42. Further, pursuant to Massachusetts law, Plaintiff is entitled to recover his reasonable pre-judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered.

WHEREFORE, Plaintiff prays for Judgment against Defendant eBizJets as follows:

a. Pursuant to Mass. Gen. Laws ch. 149 § 148 and 150, Defendant's willful failure to timely pay Plaintiff and/or change Plaintiff's termination designation from "without cause" to "with cause" entitles Plaintiff to recover treble damages of the amount of the value of Plaintiff's vested stock options at the time of his termination, in an amount to be determined at trial, but upon information and belief in excess of $92,000.00, with interest thereon at the rate allowable by law;

b. For Plaintiff's reasonable pre-judgment and post-judgment attorneys' fees and costs incurred in the prosecution of this action, and the collection of any judgment rendered; and

c. For such other and further relief as this Court may deem just and proper.

. . .

. . .

. . .

DATED this ____ day of November, 2004.

                PARKER LAW FIRM, P.L.C.

By:_____
    John D. Parker, II, *Pro Hac Vice*
    Anthony E. Young, *Pro Hac Vice*
    141 E. Palm Lane, Suite 111
    Phoenix, AZ 85082-3098
    (602) 257-81007

    -and-

    Edward C. Cooley, BBO #550117
    GIARRUSSO, NORTON, COOLEY
    & MCGLONE, P.C.
    308 Victory Road
    Quincy, MA. 02171
    (617) 770-2900

    *Attorneys for Plaintiff Donald Scollins*

## CERTIFICATE OF SERVICE

I, John D. Parker, II, hereby certify that on this ____ day of November, 2004, I caused copies of **PLAINTIFF'S FIRST AMENDED COMPLAINT** to be served by first class mail, postage pre-paid, addressed to Max C. Perlman, Esq., Sullivan, Weinstein & McQuay, P.C., Two Park Plaza, Suite 610, Boston, MA. 02116-3902 (Attorneys for Defendant).

                _____
                John D. Parker, II

K:\978\021377\first-amend.cmp