IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DONALD SCOLLINS, individually and on behalf of BOTTOM LINE ADVERTISING, a sole proprietorship,

Plaintiff,

vs.

SENTIENT, fka eBizJets, a Delaware corporation,

Defendants.

Civil Action No. 03-12478EFH

## MEMORANDUM OF LAW IN SUPPORT OF SENTIENT'S MOTION TO DISMISS COUNT IV OF THE FIRST AMENDED COMPLAINT

The defendant, Sentient Jet, Inc. ("Sentient"), submits this Memorandum in Support of its Motion to Dismiss Count IV of the First Amended Complaint. Count IV purports to assert a "Wage Claim" under Mass. Gen. L. c. 149, § 148 and 150 (c. 149, §§ 148 and 150 are commonly and hereinafter referred to as the "Weekly Wage Law").

The "Weekly Wage Law" claim fails as a matter of law because the plaintiff, Donald Scollins, has failed to satisfy a statutory prerequisite to filing a claim under the Weekly Wage Law. Massachusetts law mandates that all such claims must be filed with the Massachusetts Attorney General before a party can bring such a claim in court. Because Scollins fails to allege that he has filed his Weekly Wage Law claim with the Attorney General, Count IV should be dismissed. And even if Scollins had satisfied the statutory prerequisites, the Weekly Wage Act claim would still fail. The stock options he

seeks to exercise do not fall within the Weekly Wage Law because they are not "wages" within the meaning of the statute, and because Scollins' right to exercise those options is a contingent right under a contract, which the Massachusetts Appeals Court has held to be outside the scope of the Weekly Wage Law.

## SCOLLINS' CLAIMS[1]

Donald Scollins ("Scollins") was employed as Sentient's Director of Charter Operations and Vice President-Flight Operations. (First Amended Complaint ¶6, 8.) In connection with Scollins' employment, Sentient paid Scollins a salary and performance-based bonuses. (Id. at ¶6.) Sentient also granted Scollins stock options pursuant to a written stock option agreement. (Id. at ¶8-10.) The agreement provided that Scollins' right to exercise his stock options would be forfeited if he were terminated "for cause," as determined by the Board of Directors. (Id.)

Sentient terminated Scollins' employment on November 23, 2001 in a meeting in which Sentient's Chief Executive Officer informed Scollins of a number of violations of company policy by Scollins. (Id. at ¶13.) In January 2002, Sentient's Board of Directors met and determined that Scollins' termination was *for cause*, and Scollins was informed of the Board's decision. (Id. at ¶16-17.)

Counts I and II of the First Amended Complaint allege that Sentient breached its contract with Scollins by refusing to allow him to exercise his stock options because, he contends, there was no basis to terminate him for cause. In Count IV of the First Amended Complaint, which was recently added by amendment, Scollins claims that the

---

[1] For the purposes of this Motion, the defendant and the Court are obliged to accept properly pleaded allegations as they appear in the Complaint. That said, the defendant denies culpability with respect to the plaintiff's claims, and reserves the right to challenge all of the Complaint's allegations, as appropriate.

2

forfeiture of the stock options precipitated by his "for cause" termination also constitutes a violation of the Weekly Wage Law, for which he seeks treble damages and attorneys' fees.

## ARGUMENT

**I.   THE CLAIM UNDER THE WEEKLY WAGE ACT FAILS AS A MATTER OF LAW, BECAUSE SCOLLINS HAS FAILED TO SATISFY A STATUTORY PREREQUISITE TO BRINGING SUCH A CLAIM**

Mass. Gen. Laws c. 149, § 150, governs claims under the Weekly Wage Law and provides in pertinent part:

> Any employee claiming to be aggrieved [with regard to wages, hours, or commissions] may, at the expiration of ninety-days *after the filing of a complaint with the attorney general, or sooner, if the attorney general assents in writing*, and within three years of such violation, institute and prosecute in his own name and on his own behalf ... a civil action for injunctive relief and any damages incurred...

(Emphasis added.) Therefore, before filing a claim for unpaid wages in any court, a plaintiff must either file a complaint with the Massachusetts Attorney General or obtain the Attorney General's written permission. *Id.* Failure to do so requires dismissal of the Weekly Wage Claim. *Daly v. Norton Company*, 10 Mass.L.Rptr. 674, 1999 WL 1204011 *4 (Mass. Super. Ct. Nov. 15, 1999) (Hillman, J.) (dismissing Weekly Wage Claim because plaintiff failed to file a complaint with or seek the permission of the Attorney General); *Axton-Cross Co., Inc. v. Roger Blanchette*, 2 Mass.L.Rptr. 646, 1994 WL 879570, *3-4 (Mass.Super. Oct. 17, 1994) (Lauriat, J.) (dismissing Weekly Wage counterclaim because no facts alleged indicating that a complaint was filed with the Attorney General or that Attorney General granted written approval).

3

Scollins does not allege that he has filed a complaint with the Attorney General or obtained the Attorney General's written permission. For this reason, Scollins has not satisfied the Weekly Wage Law's prerequisites, and his proposed wage claim must be dismissed.

### II. THE WEEKLY WAGE CLAIM FAILS BECAUSE SCOLLINS' CONTRACTUAL CLAIM FOR STOCK OPTIONS IS NOT ACTIONABLE UNDER THE WEEKLY WAGE LAW.

In asserting a claim under the Weekly Wage Law, Scollins does not claim that Sentient failed to pay him any of the salary or other benefits he had earned as of the time of his termination. Instead, he claims that Sentient violated the Weekly Wage Law by refusing to allow him to exercise his stock options under the governing written agreement. This claim fails as a matter of law for two reasons, however. First, stock options are not "wages" within the meaning of the statute. Second, Massachusetts courts have made very clear that employers may not be held liable under the Weekly Wage Law for failing to pay employees benefits that are contingent on the terms of a contract.

#### A. The Weekly Wage Law

The Weekly Wage Law prescribes the timing and intervals for payment of "wages" by Massachusetts employers. Mass. Gen. L. c. 149, §148. It also provides that all wages of a discharged employee must be paid in full on the day of discharge. Id. The Weekly Wage Law, which was enacted "to limit 'the interval between the completion of a work week and the payday on which the wages earned in that week will be paid,'" was intended and designed to protect wage earners from the long-term detention of wages by

4

unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages. *Cumpata v. Blue Cross Blue Shield of Massachusetts, Inc.*, 113 F.Supp.2d 164, 167-168 (D.Mass. 2000) (Young, J.) *quoting American Mutual Liability Insurance Co. v. Commissioner of Labor and Industries*, 340 Mass. 144, 163 N.E.2d 19 (1959). *Id.* Although "wages" is not defined in the Weekly Wage Law, the term has been afforded a "narrow construction." Mass. Gen. L. c. 149, § 148; *Prozinski v. Northeast Real Estate Services, LLC*, 59 Mass.App.Ct. 599, 603-605, 797 N.E.2d 415, 419-421 (2003).

### B. Disputes Regarding an Employee's Right to Exercise Stock Options Under an Agreement Are Not Covered by the Weekly Wage Law.

Scollins' claim fails in the first instance because the Weekly Wage Law simply does not apply to stock options, as Judge Stearns held in *Baptista v. Abbey Healthcare Group, Inc.*, No. 95-10125, slip. op. at 8-9, 1996 WL 33340740, at *4 (D. Mass. April 10, 1996) (Stearns, J.) (a courtesy copy is attached hereto as Exhibit A). In *Baptista*, the plaintiffs argued, as Scollins seems to assert in this case, that the stock options granted to them should be considered "wages and other benefits" within the meaning of the Weekly Wage Law. Judge Stearns rejected the plaintiffs' argument, holding as a matter of law that stock options are not recoverable under the Weekly Wage Law.

*Baptista's* holding that stock options are outside of the purview of the Weekly Wage Law has been relied upon by federal and Massachusetts state courts in strictly limiting the coverage of the Weekly Wage Law in other circumstances. *See Cumpata*, 113 F.Supp.2d at 167 (citing *Baptista* in dismissing Weekly Wage Law claim for commission); *Dennis v. Jager, Smith & Stetler*, No. 984974G, 2000 WL 782946, at *1

(Mass.Super. April 10, 2000) (Ball, J.) (citing *Baptista* in holding that attorney's draw is not a "wage" under the Weekly Wage Law); *Kohli v. RES Engineering, Inc.*, No. 00-02458, slip. op. at 4-5, 2000 WL 1876605, at *2 (Mass. Super. Dec. 19, 2000) (Garsh, J.) (citing *Baptista* for proposition that stock options are not compensation "encompassed by" the Weekly Wage Law).

A recent Massachusetts Appeals Court case further establishes that stock options are outside the scope of the Weekly Wage Law. In *Prozinski v. Northeast Real Estate Services, LLC*, 59 Mass.App.Ct. 599, 603-605, 797 N.E.2d 415, 419-421 (2003), the court held that Weekly Wage Claims are strictly limited to the specific types of employment compensation enumerated in the statute, namely: 1) weekly or biweekly wages having been earned during a particular pay period; 2) holiday or vacation pay; and 3) definitely determined commissions which are due and payable. *Id.* The court rejected the plaintiff's attempt to recover severance pay because the statute does not specifically refer to severance pay, and refused to look outside the words of the statute to interpret the meaning of "wages." *Id.* Akin to its silence on severance pay, the Weekly Wage Law does not refer to stock options. Under the recent holding in *Prozinski*, the Weekly Wage Law does not apply to stock options and Scollins' Weekly Wage Claim, therefore, fails.

Additionally, federal and Massachusetts state courts have consistently held that the Weekly Wage Law does not apply when an employee seeks to enforce contract rights to contingent benefits, such as Scollins' right to exercise his stock options under the stock option agreement. It is clear that any form of compensation that is triggered by contractual contingencies is outside the scope of the Weekly Wage Act. *Cumpata*, 113 F.Supp.2d at 168. In *Prozinski*, the Massachusetts Appeals Court relied upon *Cumpata*,

6

holding that that the plaintiff's severance pay was outside the scope of the Weekly Wage Law because the contract provided that it was contingent upon his severance from his employer. 59 Mass.App.Ct. at 603-605, 797 N.E.2d at 419-421. In reaching this conclusion, the Appeals Court quoted and relied on *Cumpata*'s holding that "there is no evidence that the Legislature intended to provide treble damages and attorneys fees and costs [under the Weekly Wage Law] to professionals <u>enforcing their asserted contract rights</u>." 59 Mass.App.Ct. at 603, 797 N.E.2d at 420 (emphasis added).

On facts quite similar to those at bench, Judge Botsford in *Wessling v. Massachusetts Turnpike Authority*, No. 97-3808-E, at *26 (Mass.Super. Jan 15, 2001) (a courtesy copy is attached hereto as Exhibit B) held that severance pay and benefits provided by employment contract were not "wages" under the Weekly Wage Law because the contract provided – like this stock options claimed by Scollins -- that "their availability was wholly contingent on [the plaintiff's] termination without cause." *See also Kunzi v. Katzenstein*, No. 03-11931-RCL (D.Mass. Oct. 27, 2004) (Lindsay, J.) (a courtesy copy is attached hereto as Exhibit C) (relying on *Wessling* to dismiss a Weekly Wage Law claim on the ground that the compensation at issue was contingent, and therefore, outside the scope of the Weekly Wage Law); *Kittredge v. McNerney*, No. 03-2146, 2004 WL 1147449, at *3-4 (Mass. Super. Ct. May 7, 2004) (relying on *Prozinski* to hold that the Weekly Wage Law did not apply to the plaintiff employees' contractual rights to recover certain payments which were contingent on their not being terminated for cause, stating "[s]uch obligations may be enforceable in contract actions, but fall outside the special protection granted by the Legislature under the Wage Act to wages paid for hours worked.")

7

In a case that is virtually indistinguishable from the case at bar, the Tenth Circuit, in *Weir v. The Anaconda Company*, 773 F.2d 1073, 1083-1086 (10th Cir. 1985), reached precisely the same conclusion urged by Sentient herein. That court held that stock options did not constitute "wages" under a Kansas wage statute (which is similar to the Massachusetts Weekly Wage Law), because the plaintiff's right to receive benefits under the stock option plan was not absolute. The parties in that case, like the parties in this case, entered into an agreement that provided that the plaintiff's right to exercise the stock options would terminate if the plaintiff was terminated for cause. The court held that this contingency made the plaintiff's right to stock options "not absolute," and therefore outside the purview of the wage statute. *Id.*

In addition to the language and judicial interpretations of the Weekly Wage Law, the very *mechanics* of the statute establish that it would not be reasonable, consistent with the Legislature's intent, or even equitable, to allow employees to base Wage Act claims on contractual rights to stock options. The Weekly Wage Law, which is entitled "*Payment* of wages...,"[2] sets out the requirements for making these *payments*. It states that employers "shall pay" employees weekly or bi-weekly, and that an employee discharged from employment "shall be paid in full on the day of his discharge." M.G.L. c. 149, §148.

An employer, however, cannot "pay" stock options. Unlike wages, commissions, and vacation pay, stock options are neither calculable nor remittable on the day of termination. Because a stock option is the holder's "choice," it makes no sense at all to require the employer to somehow "pay" the employee/option holder. If a dispute later

---

[2] "The title of an act is part of it and is relevant as a guide to legislative intent." *Commonwealth v. Savage*, 31 Mass.App.Ct. 714 (1991) *citing Commonwealth v. Jarrett*, 359 Mass. 491, 495 n.5 (1971).

8

arises with regard to whether the employee forfeited the stock options, it is a contract dispute, but not a failure by the employer to "pay" anything. Further, if an employee could sue under the Weekly Wage Law for the forfeiture of his stock options, every employer terminating an employee with stock options would automatically be in violation of the Weekly Wage Law, regardless of whether the employee were subsequently allowed to exercise the options as agreed, in that it would be impossible for the employer to "pay" the stock options to the terminated employee on the date of termination.

Scollins' First Amended Complaint illustrates this point. Scollins alleges that he is entitled to a multiple of the "value of [his] vested stock options at the time of termination, *said amount to be determined at trial...*" (First Amended Complaint ¶41, emphasis added.) More than three years have passed since Scollins' termination, and he still cannot state the amount that Sentient was required to "pay" him on the date of his termination – yet he purports to ask the Court to award him attorneys' fees and treble damages for Sentient's failure to pay him this entirely indefinable amount.

In short, Scollins' Weekly Wage Law claim in Count IV should be dismissed as a matter of law because the statute was never intended to, and does not in fact, apply to an employee's contingent rights to exercise stock options that are dependent not only on the terms of a contract but also on a court ruling as to whether he was terminated for cause.

## CONCLUSION

For the reasons stated herein, and in the accompanying Motion to Dismiss, Sentient Jet, Inc. respectfully requests that this Court dismiss Count IV of the First Amended Complaint.

SENTIENT, fka eBizJets, a Delaware corporation,

By its attorneys,

C. Max Perlman (BBO #630395)
A. Lauren Carpenter (BBO #551258)
SULLIVAN WEINSTEIN & McQUAY, PC
Two Park Plaza, Suite 610
Boston, Massachusetts 02116
(617) 348-4300

Dated: January 18, 2005

## CERTIFICATE OF SERVICE

I, C. Max Perlman, hereby certify that the above document was served upon counsel for the plaintiff by fax and mail on January 18, 2005.

C. Max Perlman