IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DONALD SCOLLINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 03-12478-EFH ) |
| SENTIENT, fka eBizJets, a Delaware Corporation | ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO SENTIENT'S MOTION TO DISMISS COUNT IV OF THE FIRST AMENDED COMPLAINT**

Plaintiff Donald Scollins ("Scollins") hereby responds to Defendant Sentient's Motion to Dismiss Scollins' claim for unpaid wages.

**I.  THE FAILURE TO FIRST FILE A WAGE CLAIM WITH THE ATTORNEY GENERAL SHOULD BE OF NO CONSEQUENCE.**

Scollins concedes that he did not file a complaint with the Massachusetts Attorney General. However, that does not mean his wage claim should be automatically dismissed. Mass. G.L. c. 149, § 150, specifically grants, as a matter of right, a party with the ability to file a civil action for a wage law violation after ninety days. In fact, in almost every wage claim case cited by Sentient, the Attorney General permitted a civil action before the expiration of the ninety days. Thus, Scollins requests that this Court grant him leave in which to file a complaint with the Attorney General.

-1-

Moreover, Scollins has timely brought his claim, within the applicable statute of limitations. The Attorney General has stated in an advisory that the statute of limitations for a civil violation is three years from the date of violation. *See, Advisory 2004/3, An Advisory for the Attorney General's Fair Labor and Business Practices Division on an Act Protecting the Wages and Tips of Certain Employees.* Here, Scollins' wage claim arose on January 15, 2002, the date that he was informed his termination had been changed from "without cause" to "with cause." This would set the statute of limitations at January 15, 2005. However, Scollins raised this issue well before that date.

Additionally, it is well established that a statute of limitations does not begin to run until the employee discovers or reasonably should have discovered the violation. *Bowen v. Eli Lilly & Co., Inc.*, 408 Mass. 204, 205 (1990). Here, Scollins discovered that Sentient considered his unpaid stock options wages for the first time during a deposition of John Williams, Sentient's former Chief Executive Officer, on July 15, 2004. During that deposition, Mr. Williams specifically testified that stock options had been given to Scollins and other employees "as part of an overall compensation program that the company instituted for its employees." (See Exhibit One, 45:2-4).

Clearly, Scollins is still within the statute of limitations to file a complaint with the Attorney General. And, if this Court deems it necessary to do so, Scollins respectfully requests leave to file his wage claim. In any event, Scollins' wage claim should not be dismissed.

## II. SCOLLINS' UNPAID STOCK OPTIONS ARE WAGES WITHIN THE MEANING OF MASS. G.L. c. 149 AND 150.

Even though Sentient has admitted that it issued stock options to Scollins "as part of an overall compensation program that the company instituted for its employees", Sentient somehow argues that stock options are not "wages" within the meaning of Mass. G.L. c. 149 and 150. In so doing, Sentient cites several cases in support of its position.

The cases are distinguishable. For example, all but one of the cases *(Baptista)* address employees' claims for *reimbursement* other than stock options. With respect to *Baptista v. Abbey Healthcare Group, Inc.*, 1996 WL 33340740 (D.Mass.) (an unpublished decision), that case is easily distinguishable from the case at bar. In *Baptista*, the plaintiffs claimed they were entitled to exercise certain options if they were terminated by their employer, and when they were terminated, the employer reneged on its promise. The Court disallowed plaintiffs' claim that the stock options were wages because it refused to characterize a contingent benefit as wages:

> The distinction between assured and contingent compensation is a sound one. In this case, there is no reason to extend the protections of a wage earner's statute to cover bonuses potentially owing to highly paid executives, who were confident enough to resign their employment if their demands for accelerated (and contingent) stock options were not met.

*Baptista*, 1996 WL 33340740 at 4.

Unlike the vesting schedule in *Baptista*, which was a "work in progress" when the plaintiffs were terminated, Scollins' stock options were awarded *pursuant to a written*

*contract.* Moreover, by Sentient's own admission, the options were awarded for work already performed. There was nothing "contingent" about Scollins' award.

In November 2001, when it terminated Scollins, Sentient classified Scollins' termination as "without cause." Scollins and Sentient operated under this assumption for nearly two months, and Scollins did not exercise his options. Then, in mid-January 2002, Sentient changed its "mind" and classified the termination as "for cause" which meant Scollins could not exercise any of his options.

It is patently unfair and unjust for Sentient to claim that Scollins' right to exercise stock options which were awarded to him "for a job well done" are not "wages", because the options are contingent when Sentient completely controlled how Scollins' termination would be classified.

A Massachusetts superior court recently decided not to dismiss a plaintiff's wage claim for stock options at the early Motion to Dismiss stage. *See, Brown v. Nortel*, 14 Mass.L.Rptr. 544, 2002 WL 1290398 (Mass.Super. 2002) (an unpublished decision). In *Brown*, the Court refused to dismiss a wage claim for stock options on the defendant's motion to dismiss. The court ruled that it was premature to make a ruling as to whether stock options were wages, then went on to say:

> If this Court was the trial judge, I would let the issue go to the jury, reserving the right to take the decision away after the verdict.

*Id.*

That is precisely what the Court should do here.

### III. CONCLUSION.

In light of the foregoing, Scollins respectfully requests the Court deny Sentient's motion. In the alternative, Scollins requests this Court grant leave for Scollins to file a complaint with the Attorney General.

RESPECTFULLY SUBMITTED this 22nd day of February, 2005.

PARKER LAW FIRM, P.L.C.

By: _____
John D. Parker, II, *Pro Hac Vice*
Anthony E. Young, *Pro Hac Vice*
141 E. Palm Lane, Suite 111
Phoenix, AZ 85082-3098
(602) 257-81007
   -and-
Edward C. Cooley, BBO #550117
GIARRUSSO, NORTON, COOLEY
& MCGLONE, P.C.
308 Victory Road
 Quincy, MA. 02171
(617) 770-2900
*Attorneys for Plaintiff Donald Scollins*

### CERTIFICATE OF SERVICE

I, John D. Parker, II, hereby certify that on this 22 day of February 2005, I caused copies of **PLAINTIFF'S RESPONSE TO SENTIENT'S MOTION TO DISMISS COUNT IV OF THE FIRST AMENDED COMPLAINT** to be served by first-class mail, postage pre-paid addressed to Max C. Perlman, Esq., Sullivan, Weinstein & McQuay, P.C., Two Park Plaza, Suite 610, Boston, MA 02116-3902 (Attorneys for Defendant).

_____
John D. Parker, II

**Exhibit One**

1    A.   They were being granted to Mr. Scollins
2    along with other employees as part of an overall
3    compensation program that the company instituted for
4    its employees.
5    Q.   Were you involved in instituting that
6    program?
7    A.   I was.
8    Q.   Why did you institute it?
9    A.   I wanted to retain excellent employees.
10   Q.   Did other people recommend to you that
11   these options be granted to Mr. Scollins?
12        MR. PERLMAN:  I'm going to object.  To
13   the extent that a lawyer representing you or the
14   company recommended anything, please do not tell Mr.
15   Parker.
16        MR. PARKER:  Sure.
17        MR. PERLMAN:  You may answer.
18   A.   As I recall, the granting of stock options
19   to employees was a matter I discussed with my senior
20   management team at the time.
21   Q.   If I've asked you this already, I
22   apologize.  Who was your senior management team?
23   A.   That senior management team evolved over
24   time as the company grew.

FARMER ARSENAULT BROCK LLC

# PARKER LAW FIRM
## P.L.C.
### ATTORNEYS AT LAW

141 E. Palm Lane, Suite 105  
Phoenix, Arizona 85004  
P.O. Box 63098  
Phoenix, Arizona 85082-3098

Telephone: (602) 257-8100  
Facsimile: (602) 257-8110

FILED  
IN CLERKS OFFICE  
2005 FEB 23 A 11: 48  
U.S. DISTRICT COURT  
DISTRICT OF MASS.

COPY

February 22, 2005

**VIA FACSIMILE AND U.S. MAIL**

C. Max Perlman  
SULLIVAN, WEINSTEIN & MCQUAY, P.C.  
Two Park Plaza, Suite 810  
Boston, MA 02116-3902

Re: Donald Scollins v. Sentient fka eBizJets

Dear Max:

This letter will confirm your recent telephone conversation of February 21, 2005, with my paralegal, Jodi Wheeler, in which you graciously extended Plaintiff's time to respond to Sentient's Motion to Dismiss Count IV of the First Amended Complaint through Wednesday, February 23, 2005.

A copy of Plaintiff's Response to Sentient's Motion to Dismiss is enclosed with this correspondence.

Should you have any questions concerning this matter, please don't hesitate to call. Thank you.

Yours very truly,

John D. Parker, II

JDP:jdw  
Enclosure: As indicated

cc: The Honorable Edward F. Harrington  
    U.S. District Court - District of Massachusetts