1 | **PARKER & THOMPSON, P.L.L.C.**
_____ ATTORNEYS AT LAW _____
2 | 141 E. Palm Lane, Suite 111 ♦ Phoenix, Arizona 85004
P.O. Box 63098 ♦ Phoenix, Arizona 85082-3098
3 | Telephone: (602) 257-8100 ♦ Facsimile: (602) 257-8110
John D. Parker, II #015955
4 | Jerald C. Thompson, #009324
Attorneys for Plaintiff
5 |

6 |
7 | IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS
8 |

9 | DONALD SCOLLINS,                                  )
                                                     )    No. 03-12478-EFH
            Plaintiff,                               )
10 |                                                 )    PLAINTIFF'S RESPONSES
v.                                                   )    TO DEFENDANT'S FIRST
11 |                                                 )    SET OF NON-UNIFORM
SENTIENT, fka eBizJets, a Delaware corporation,      )    INTERROGATORIES
12 |                                                 )
            Defendants.                              )    (Assigned to the Hon.
13 | _____)        Edward F. Harrington)

14 |       Plaintiff, Donald Scollins, hereby answers Defendant's First Set of Non-Uniform
15 | Interrogatories as follows.

16 | **1.    Please identify and describe all of the terms of the alleged "Advertising**
17 | **Placement Agreement," referred to in paragraph 11 of the Complaint.**

18 |       **ANSWER:**   When an advertising agency places an advertisement in print media such
19 | as *The Wall Street Journal* ("*WSJ*"), the advertising agency generally receives a 15%
20 | discount. The 15% difference between the "gross" charges (those charges paid by the
21 | client) and "net" charges (those charges paid to *WSJ*), is the customary "commission"
22 | received by the advertising agency.

23 |             In August of 1999, eBizJets was considered a "startup" company by *WSJ*,
24 | and therefore ineligible for the 15% discount. Conversely, Bottom Line Advertising
25 | ("BLA"), the advertising agency owned by Mr. Scollins, had an established record of
26 | placing advertisements in *WSJ*, and received the 15% discount.

1    In order to save eBizJets desperately needed capital, Mr. Scollins agreed
2    to place eBizJets advertisements in *WSJ* through Bottom Line Advertising.  Mr.
3    Scollins agreed to defer receiving the commission due BLA.

4    The "Advertising Placement Agreement" consisted of the following
5    terms:

6    •    Mr. Scollins would place eBizJets advertisements in *WSJ* and
7    other industry publications through BLA.

8    •    Mr. Scollins would pass the 15% discount to eBizJets, deferring
9    the commission otherwise due BLA.

10   •    Mr. Scollins would be paid the commissions due for the
11   advertisements upon the occurrence of either of two events:

12   •    eBizJets was sold to another entity; or

13   •    Mr. Scollins' employment with eBizJets ended.

14   Between September of 1999 and Mr. Scollins' termination in January of
15   2002, BLA placed a total of $2,343,174.06 worth of advertisements in *WSJ* on behalf
16   of eBizJets.  eBizJets paid only $1,991,699.29 for those advertisements.  The
17   difference, $351,474.77, is the amount due BLA for commissions.

18

19   **2.    Regarding the alleged "Advertising Placement Agreement," referred to in**
20   **paragraph 11 of the Complaint, please describe in detail all of the negotiations that led**
21   **to that "Agreement," including in your answer:**

22   **(a)    The identity of each person who participated in the negotiations:**

23   **ANSWER:**  The negotiations were between Plaintiff and  Joseph Creed.  Greg
24   Goodwin was also present during the negotiations.

25   **(b)    The date of the negotiations:**

26   **ANSWER:**  August, 1999.

2

1        **(c)**     **The place of the negotiations:**

2        **ANSWER:**   The negotiations occurred in Joseph Creed's office.

3        **(d)**     **The substance of the communications regarding or constituting the**

4 **negotiations:**

5        **ANSWER:**   The agreement was verbal. The matter was discussed and settled on the

6        same day over a 20 minute span.

7        **(e)**     **The date of the conclusion of the negotiations:**

8        **ANSWER:**   The negotiations concluded on the same day they were initiated in

9        August, 1999.

10

11 **3.**     **Do you contend that the person who negotiated the alleged "Advertising**

12 **Placement Agreement" was authorized to enter into an agreement on behalf of Sentient**

13 **in this regard?  If so, please explain the basis for your contention.**

14        **ANSWER:**   Yes. Jeff Creed was the President, founder, and majority owner of the

15        company.

16

17

18 **4.**     **Please identify each and every document that concerns, reflects, refers to**

19 **describes, evidences, or constitutes the alleged "Advertising Placement Agreement,"**

20 **referred to in paragraph 11 of the Complaint.**

21        **ANSWER:**   Advertising contracts, insertion orders and invoices between BLA and

22        *WSJ* (and numerous other magazines); notes from Carol Caliendo, Human Resource

23        Director, from the November 23, 2001 meeting when John Williams informed Mr.

24        Scollins that Mr. Scollins was being terminated "without cause;" Bottom Line

25        Advertising Agreements; and personal files.

26

5.    **Please describe each and every communication that Scollins had with any Sentient employee or representative regarding the alleged "Advertising Placement Agreement," referred to in paragraph 11 of the Complaint.**

> **ANSWER:**  With Mr. Creed and Mr. Goodwin in Mr. Creed's office (See answer to 2a - 2d above);  with Janet Vye, Bob Herlihy and Janet Osbourne in Accounting, when they heard Plaintiff say that Sentient was paying him for the ad placements; with Don Smith, Jack Lambert, Dan Underwood, Steve Schofield,  Steve Morton and Paul Sullivan when the matter was mentioned in the same context; and with John Williams in his office on the day he learned Plaintiff owned his own advertising agency and had been placing the ads on behalf of eBizJets, without compensation, and that Mr. Scollins would get compensation after the company was sold.

6.    **Please describe in detail all advertising-related work done by Scollins and/or Bottom Line Advertising for Sentient.**

> **ANSWER:**  Mr. Scollins Plaintiff placed all insertion orders and signed all contracts, establishing Bottom Line Advertising as the responsible party.   Mr. Scollins handled all face to face and phone meetings with all vendors for the first 18 months.  Mr. Scollins did much of the creative layout and design work, along with Dan Underwood.

7.    **Please describe in detail all advertising-related work done by Scollins and/or Bottom Line Advertising for any party other than Sentient, including in your answer: the name of the client; a description of the nature of the work; the amount invoiced; and the amount paid to Scollins and/or Bottom Line Advertising.**

> **ANSWER:**  During the years 1997 and 1998, Plaintiff handled the advertising recommendation, design and placement for:

4

| 1 | a. Cooler Supply Co. | Patrick Field | $2000.00 | (602) 763-2346 |
| 2 | b. AAA Transport | Spiros | $1500.00 | (603) 756-0412 |
| 3 | c. Superior Carburetor | Bill O'Gorman | $20,000.00 | (888) 577-4197 |
| 4 | d. AA Cadillac Reservations | G. Schlessinger | $1200.00 | (888) 779-0800 |

**8.    Please state the full and complete factual basis for the allegation in the Complaint that "eBizJets breached the Stock Option Agreement it had with Mr. Scollins, by wrongfully terminating him for 'cause,' and depriving him of his vested rights under the Stock Option Agreement.**

**ANSWER:**  On November 8, 2000, Defendant granted Mr. Scollins the option to purchase 280,412 shares of eBizJets stock at a price of $0.50 per share.   The "Vesting Commencement Date" for the options was February 2, 2001.  On that date, 25% of the options "vested."  Thereafter, shares vested at the rate of 2.0833% (5,841.823196 shares) each month.  On September 19, 2001, Defendant granted Mr. Scollins an additional 1,000 shares for Mr. Scollins' exemplary service in the wake of September 11, 2001.

On November 23, 2001, John Williams relieved Mr. Scollins of all duties and explained to Mr. Scollins he was being terminated "without cause." Over the next two months, Mr. Williams and others attempted to manufacture a case of "cause" for Mr. Scollins' termination, in a transparent effort to deprive Mr. Scollins of the option to purchase his vested shares at the agreed upon price of $0.50 per share.

At the time of his termination, on January 15, 2002, Mr. Scollins' had accumulated 135,363.055156 "vested" shares.

Upon information and belief, in 2001, CSFB acquired a large portion of eBizJets at an agreed upon price of $1.25 per share.  Accepting that amount as the

5

1  "value" of eBizJets stock, the attempt to manufacture a case of termination "for
2  cause," deprived Mr. Scollins of a profit of $101,522.29 for his "vested" shares.

3         Had Mr. Scollins not been wrongfully terminated, all 281,412 shares

4  would have vested, and his profit would have been $211,059.00 (at $1.25 per share).

5

6  **9.    Please identify each and every flight that you took on an airplane owned or**

7  **operated by a Sentient carrier during your employment with Sentient, and for each**

8  **flight, please identify:  the dates, the carrier, the airport of origin, the destination**

9  **airport, the reason for the trip, the amount that you paid for the trip, the method of**

10  **payment, and any documents concerning the flight.**

11         **ANSWER:**  a.    On or about July 10-11, 2000, on ExecJet from PHX-LAS-
12                            PHX, $0.00.

13                      b.    On or about January 27, 2001, on Globaljet Alliance from
14                            BOS-BCT,  $0.00.

15                      c.    During April of 2001, on Aircharter Professionals from SDL-
16                            LAS-SDL, $0.00.

17                      d.    On or about November 14, 2001, on Pacific Jet from SDL-
18                            LAS, $500.00.

19

20  **10.   What is Scollins' familial relation to Joseph Creed?**

21         **ANSWER:**  Mr. Creed is Plaintiff's  cousin.

22

23

24

25

26

6

11. **Identify each expert witness whom you expect to call to testify at trial, and, with respect to each such witness, state separately: (a) the substance of the facts and opinions to which each expert is expected to testify; and (b) a summary of the grounds for each such opinion.**

> **ANSWER:** At this time, Mr. Scollins has not identified any expert witnesses. When and if such witnesses are deemed necessary, Mr. Scollins will comply with Fed. R. Civ. P. 26(a)(2).

12. **Identify each fact witness whom you expect to call to testify at trial, and state the substance of the facts to which each witness is expected to testify.**

> **ANSWER:** Please see Section A of Plaintiff's Initial Disclosures, dated June 10, 2004.

13. **Please identify and compute in full the damages, and each and every element and component thereof, allegedly suffered by Scollins as a result of the Defendant's acts and omissions alleged in the Complaint. With respect to your computation of damages, please:**

**(a)** **Identify by date and author every document on which such computation is based, including materials bearing on the nature and extent of the damages suffered, and summarized the contents thereof;**

**(b)** **Identify by date and author every document which you contend supports, evidences, records, or constitutes on or more of the elements of your damage claim, and summarize the contents thereof; and**

**(c)** **Identify each person having any knowledge of any portion of your damage.**

7

**ANSWER:**  Please see Section C of Plaintiff's Initial Disclosures dated June 10, 2004.

• **Stock Options:**   The number of stock options are based on the document entitled "eBizJets.com, Inc. Stock Option Agreement Incentive Stock Option" attached to Defendants' First Set of Requests for Admissions to the Plaintiff as Exhibit A; ¶ 10 of the Complaint; and ¶ 10 of the Answer.  The calculation of vested shares is based on the formula included in Paragraph 3 of the "eBizJets.com, Inc. Stock Option Agreement Incentive Stock Option" attached to Defendants' First Set of Requests for Admissions to the Plaintiff as Exhibit A.   The actual computations are reflected in the "Stock Option Calculations" attached to Plaintiff's Initial Disclosures as Exhibit A.

The price of each share of stock will be determined by an examination of available information such as any "buy/sell" agreements between CSFB and eBizJets; "buy/sell" agreements between CSFB and TH Lee Putnam Ventures; eBizJets/Sentient balance sheets; and eBizJets/Sentient "profit and loss" statements.

• **Advertisement Placement Agreement:**     The damages due under the Advertisement Placement Agreement to Bottom Line Advertising are based on invoices provided by Dow Jones & Co.  A listing of the invoices, as well as the actual calculations, are attached to Plaintiff's Initial Disclosures as Exhibit B, as amended by the adjustments attached hereto as Exhibit BB.

Additional evidence expected to be obtained during discovery would include the actual invoices, payment requests and checks in the custody and possession of Defendant, as well as the records of Dow Jones & Co.  If necessary, Mr. Scollins will obtain the actual advertisements placed in *WSJ*.

Similar records may be obtained from *Flying* magazine and other publications.

8

• **Non-reimbursed Business Expenses:**    Please see Exhibit C attached hereto, which is a letter dated February 13, 2002, from Robert Herlihy to Mr. Scollins. Those documents indicate Mr. Scollins agreed to reimbursement of $7,057.92 for this category of damages, which has been paid. Accordingly, the request for payment of $12,525.00 for "Non-reimbursed Business Expenses" referred to in Section C(iii) of Plaintiff's Initial Disclosures is hereby withdrawn.

• **Moving Expenses:**    Mr. Scollins is still compiling the receipts necessary to support this request. Those receipts will be made available under the provisions of Fed. R. Civ. P. 34.

• **Bonus:**    All members of senior management at eBizJets will be questioned about bonuses paid in 2001. The financial records in the custody and control of Defendant will be sought. Mr. Scollins, Mr. Creed and all senior management are expected to testify the "customary" bonus was 25% of the individual's salary. In Mr. Scollins' case, that would be $31,250.00.

**14.    Did anyone assist you in preparing your answers to these interrogatories? If so please provide the name and address of each such individual, and describe in detail the contributions that they made.**

**ANSWER:** Jerald C. Thompson assisted in the computations and wording of the above answers.

DATED this 14th day of June, 2004.

PARKER & THOMPSON, P.L.L.C.

By: _Jerald C. Thompson_
141 E. Palm Lane, Suite 111
Phoenix, AZ 85082-3098
Attorneys for Plaintiff

9

1

## DECLARATION

2       Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

3    PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST SET OF NON-UNIFORM

4    INTERROGATORIES are true and correct to the best of my knowledge and belief.

5    EXECUTED on June 14, 2004.

6

7                                                     _____

8                                                            Donald Scollins

9

10

## CERTIFICATE OF SERVICE

11      I, Jerald C. Thompson, hereby certify that the above document was served upon

12   counsel for Defendant Sentient fka eBizJets by mail on June _____ 2004.

13

14

15                                                     _____

16                                                            Jerald C. Thompson

17

18

19   K:\978\021377\ANSWERSTOROGS.wpd

20

21

22

23

24

25

26

10

Exhibit BB

## ..LA CALCULATIONS - ADJUSTM..TS

The listing provided by Dow Jones indicates a series of adjustments.

| CREDITS | | | | |
|---|---|---|---|---|
| **Date** | **Invoice No.** | **Gross** | **Net** | **Δ** |
| 9 DEC 99 | A00095715 | -$178.08 | -$151.32 | $26.76 |
| 9 MAY 00 | A15070908 | -870.38 | -739.83 | 130.55 |
| 20 SEP 00 | A00100919 | -9,888.92 | -8,405.88 | 1,483.04 |
| 7 JUL 01 | A15075561 | -1,595.72 | -1,356.35 | 239.37 |
| 7 SEP 01 | A00106925 | -43,899.84 | -37,315.04 | 6,584.80 |
| 30 OCT 01 | A00107410 | -20,988.24 | -17,839.90 | 3,148.34 |
| 10 JAN 02 | A15076928 | -54,855.36 | -46,627.08 | 8,228.28 |
| 18 JAN 02 | A15076989 | -36,570.24 | -31,084.72 | 5,485.52 |
| **Totals** | | **-$168,846.78** | **-$143,520.12** | **$25,326.66** |

| DEBITS | | | | |
|---|---|---|---|---|
| **Date** | **Invoice No.** | **Gross** | **Net** | **Δ** |
| 14 NOV 00 | A00101846 | $378.42 | $321.64 | $56.78 |
| **Totals** | | **$378.42** | **$321.64** | **$56.78** |

Including the adjustments, eBizJets obtained $2,343,174.06 worth of advertising for only $1,991,699.29. Mr. Scollins' "commission," as adjusted, should be **$351,474.77**.

Exhibit C

| | | Amount Requested by Don Scollins | Computed Amount | Payable to: | Explanation for changed amount |
|---|---|---|---|---|---|
| Sprint Telephone | 920879010 | 683.88 | 683.88 | Sprint Telephone | |
| Sprint Yellow Pages | 300076498 | 163.20 | 163.20 | Sprint Yellow Pages | |
| Pacific Bell | 605228 | 2,537.71 | 1,729.59 | Don Scollins | Adjusted allocation based upon coverage period. |
| Bell South Directories | 80115541 | 43.33 | 43.33 | Bell South Directories | |
| Bell South Directories | 504M08634 | 681.00 | 505.26 | Bell South Directories | Adjusted allocation based upon coverage period. |
| US West/Qwest | 8885774191 | 2,030.84 | 1,656.12 | US West/Qwest | Adjusted allocation based upon coverage period. |
| SBC Ameritech | | 1,323.50 | 1,323.50 | SBC Ameritech | |
| Southwestern Bell | 508574123000 | 2,181.91 | 2,426.75 | Southwestern Bell | Wrong amount was requested from bill. |
| Verizon Directories | | 2,825.75 | -1,689.16 | Don Scollins | Account had been duplicate paid in prior month, through December. |
| Verizon telephone | 7818341182 | 53.88 | 215.45 | Don Scollins | Additional bills were outstanding for payment to you. |
| | | 12,525.00 | 7,057.92 | | |

**Checks to be printed**

| | |
|---|---|
| Sprint Telephone | $683.88 |
| Sprint Yellow Pages | $163.20 |
| Pacific Bell | 43.33 |
| Bell South Directories | 505.26 |
| US West/Qwest | 1,656.12 |
| SBC Ameritech | 1,323.50 |
| Southwestern Bell | 2,426.75 |
| Don Scollins | 255.88 |

Amount Due   $7,057.92

Computed Amounts are agreed to as final reimbursement for accounts noted.

Don Scollins _____   Date: _____

---

*Handwritten annotations:*

= Pd ALREADY (or the phone was going to be shut off.
$ the bad would have been omitted!

Earl,
THESE FIGURES ARE O.K.
EXCEPT THEY SHOULD OWE
① 2 MONTHS OF LATE FEES
② $ THE DAMAGE TO MY CREDIT - WHAT SHOULD I DO?

Mar 19 04 11:33a
02/14/2002 09:19 FAX 781 331 8127    eBizJets                                    @001



February 13, 2002

Mr. Don Scollins

Don:

The attached schedule lists the amounts requested by you for reimbursement of telephone and telephone directory accounts. These accounts reflect the cost prior to the changes made to the routing of numbers on December 12, 2001.

The total amount requested for reimbursement was $12,525.00. Upon verification of our records, several of the amounts were changed. Most notably, Verizon had double charged our American Express account in November, in affect prepaying for December 2001. The amount of the allocation reflects the period of December 13 through December 31, 2001.

To offset this amount, we are netting this amount against the amounts due to you for Pacific Bell and Verizon telephone. Upon receipt of your acceptance of these amounts as final reimbursement for these accounts, checks will be prepared in the amounts shown and paid directly to the respective vendors as shown.

Please review the list and fax the signed copy back to me.

Sincerely,

Robert Herlihy
Corporate Controller

cc: J. Williams

📖—✆⸱⸱⸱✈—🌐

EXECUTIVE JET CORPORATE CENTER ● 600 CORDWAINER DRIVE, NORWELL, MA 02061
TEL: 1-877-EBIZJETS(877-324-9538) FAX: 781-331-8127  WWW.EBIZJETS.COM