IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE
2005 SEP 27 A 9:08

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| DONALD SCOLLINS, Individually and on behalf of Bottom Line Advertising, a Sole Proprietorship, ) ) ) Plaintiff, ) ) v. ) ) SENTIENT, fka eBizJets, ) ) Defendant. ) | Civil Action No. 03-12478-EFH |

County of Maricopa   )
                     )  ss.
STATE OF ARIZONA     )

## DECLARATION OF DONALD SCOLLINS

Plaintiff, Donald Scollins, declares as follows:

1.  Sentient is a Delaware corporation, which was formerly known as eBizJets ("eBizJets" or "the Company") prior to September 2002.

2.  I worked for eBizJets as its Director of Charter Operations and received an annual salary, bonuses and commissions, and was granted stock options.

3.  I was the Director of Charter Operations for eBizJets from approximately June 1999, through November 2001.

4.  After I began working for eBizJets as its Director of Charter Operations, eBizJets, through its president, Joseph "Jeff" Creed, decided to place advertising in *The Wall Street Journal*.

5. eBizJets was given a fifteen percent (15%) authorized advertising discount by *The Wall Street Journal* because its ads were placed by an accredited advertising agency.

6. Jeff Creed knew that I had operated an advertising business prior to working for the Company. During a meeting between Jeff Creed, myself, and another employee, in or about August, 1999, Jeff Creed asked me if I could "do anything with *The Wall Street Journal's* pricing." I told Jeff Creed I could provide the Company a fifteen percent (15%) discount if it placed its advertising through my advertising agency, Bottom Line Advertising, because it was an accredited agency.

7. Jeff Creed decided to place the Company's advertising in *The Wall Street Journal* through Bottom Line Advertising so the Company did not have to pay the listed rates.

8. *The Wall Street Journal* conducted due diligence on Bottom Line Advertising and determined it was an accredited agency and, therefore, the Company was entitled to receive a fifteen percent (15%) discount.

9. eBizJets placed print advertising with *The Wall Street Journal* through Bottom Line Advertising from September, 1999 to January, 2002.

10. From September 1999 to December 2000, I placed advertising and insertion orders for eBizJets with *The Wall Street Journal*, and was consulted by the Company on the ad content as well. After December 2000, the Company hired another employee to handle my advertising tasks, but it continued to place its advertising under the name of my dba "Bottom Line Advertising."

11. I told Jeff Creed on several occasions that Bottom Line Advertising expected to be paid for its services and the cost savings realized by placing print advertising through Bottom Line Advertising with *The Wall Street Journal*.

12. Jeff Creed told me he would "work something out" when I left eBizJets or when the Company was sold, whichever came first. I understood that to mean that I would be paid the fifteen percent (15%) cost savings the Company received by placing its ads through Bottom Line Advertising when I left the Company, or when the Company was sold.

13. From September, 1999 through December, 2001, eBizJets placed $2,406,791.00 in advertising in *The Wall Street Journal* through Bottom Line Advertising. After the fifteen percent (15%) discount eBizJets received through Bottom Line Advertising was deducted, eBizJets only had to pay $2,045,772.40 for its advertising. eBizJets recognized a savings of $361,018.60 by placing its advertising in *The Wall Street Journal* through Bottom Line Advertising. (Exhibit 1.)

14. On or about November 8, 2000, eBizJets granted me 280,412 in stock options at an exercise price of $.50 a share, and the Vesting Commencement Date was on or about February 22, 2001. (Exhibit 2.)

15. When the stock options referred to in Paragraph fourteen were granted, I had to sign a "Stock Option Agreement." (Exhibit 3.)

16. On September 19, 2001, eBizJets then Chief Executive Officer, John Williams ("Williams), informed me he was recommending to the Board of Directors of

3

eBizJets that I, among others, receive 1,000 additional stock options, and the Board of Directors approved such recommendation.

17. On or about November 23, 2001, I was informed during a meeting with John Williams and Carol Caliendo that I would be terminated. Williams said I had violated certain company policies, and he gave me a "Mutual Termination Agreement." (Exhibit 4.)

18. In its recitals, the Mutual Termination Agreement stated: "Scollins is an employee of the Company and also owns or controls an entity that has done advertising business with the Company."

19. During the November 23, 2001 meeting, Williams informed me I was being terminated "without cause."

20. On January 11, 2002, eBizJets' Board of Directors held a special meeting to discuss my termination. Following the meeting, on January 15, 2002, Williams informed me that I was being terminated from eBizJets "with cause."

21. On January 15, 2002, eBizJets sent me a letter informing me that pursuant to Section 4(a)(v) of the Stock Option Agreement, my Option to purchase all or any part of the number of shares of Common Stock terminated on the date I ceased to be an employee of the Company, and that any rights I may have had to exercise any unexercised portion of the Option, whether vested or unvested, terminated effective as of 5:00 P.M. on January 15, 2002. I received the letter at 5:20 P.M. on January 15, 2002, after the

deadline which I could have exercised any unexercised portion of the Option, whether vested or unvested. (Exhibit 5.)

22.  eBizJets never disclosed to me, or my attorneys, the reasons my termination was changed from "without cause" to "with cause."

23.  On March 17, 2003, I filed a lawsuit against eBizJets and have incurred costs and attorneys' fees in the prosecution of my claims against eBizJets.

Under the pains and penalty of perjury under the laws of the State of Arizona.

Dated this 26 day of September, 2005.

                                                                    _____  
                                                                    Donald Scollins

k:/978/021377/scollinsdeclaration.