

eBizJets.com, Inc.
Stock Option Agreement
**Incentive Stock Option**

AGREEMENT entered into as of the Grant Date set forth on the signature page hereto by and between eBizJets.com, Inc., a Delaware corporation, with a principal place of business at 72 Sharp Street, Hingham, Massachusetts 02043 (the "Company"), and the undersigned employee of the Company (the "Optionee").

WHEREAS, the Company desires to grant the Optionee a stock option under the Company's 2000 Stock Option Plan (the "Plan") to acquire shares of the Company's Common Stock, $0.001 par value per share (the "Common Stock").

WHEREAS, Section 5 of the Plan provides that each option is to be evidenced by an option agreement, setting forth the terms and conditions of the option.

NOW THEREFORE, in consideration of the premises and of the mutual covenants and agreements contained herein, the Company and the Optionee hereby agree as follows:

1. Grant of Option. The Company hereby grants, under the Plan and subject to the terms and conditions of the Plan, to the Optionee a stock option (the "Option") to purchase all or any part of the number of shares of Common Stock (the "Shares") set forth below the Optionee's name on the signature page hereto, on the terms and conditions hereinafter set forth. To the maximum extent permitted by law, the Option shall be treated as an incentive stock option under Section 422 of the Internal Revenue Code of 1986, as amended (the "Code").

2. Exercise Price. The exercise price per share ("Exercise Price") for the Shares covered by the Option shall be as set forth below the Optionee's name on the signature page hereto.

3. Vesting. Except as otherwise provided in Section 4, the Option shall vest twenty-five percent (25%) on the later of (i) February 22, 2001, or (ii) the first anniversary of the date on which the Optionee's employment with the Company commenced (the "Vesting Commencement Date"), and thereafter the remaining seventy-five percent (75%) shall vest monthly at the rate of 2.0833% through the fourth anniversary of the Vesting Commencement Date. The Optionee's Vesting Commencement Date is set forth on the signature page attached hereto.

4. Term of Options; Exercisability.

    (a)    Term.

        (i)    The Option shall expire ten (10) years from the date of this Agreement, but shall be subject to earlier termination as herein provided.

        (ii)   Except as otherwise provided in this Section 4, the Option shall terminate thirty (30) days following the date the Optionee ceases to be an employee of or consultant to the Company or one of its subsidiaries, or on the date on which the Option expires

CT01/MAYNN/165015.7

by its terms, whichever occurs first; provided that the Board of Directors may, in its discretion, extend such thirty (30) day period of exercisability for such time period as it deems appropriate. Such Option shall be exercisable during such time only to the extent previously vested.

        (iii)    If the Optionee terminates employment or service as a consultant due to permanent disability (within the meaning of Section 22(e)(3) of the Code), the Option shall terminate on the last day of the sixth month from the date the Optionee ceases to be an employee of or a consultant to the Company, or on the date on which the Option expires by its terms, whichever occurs first. Such Option shall be exercisable during such time only to the extent previously vested.

        (iv)    If the Optionee dies, the Option shall terminate on the last day of the twelfth month from the date of death, or on the date on which the Option expires by its terms, whichever occurs first. Such Option shall be exercisable during such time only to the extent previously vested.

        (v)    If the Optionee's employment or service as a consultant is terminated for Cause (as defined in Section 4(b) below), or because the Optionee is in breach of any employment or consulting agreement with the Company or one of its subsidiaries, in each case as determined by the Board of Directors of the Company, such Option will terminate on the date the Optionee ceases to be an employee of or a consultant to the Company or one of its subsidiaries and be of no further force or effect. The Optionee's right to exercise any unexercised portion of the Option shall immediately terminate and all rights thereunder, shall cease, whether the Option is vested or unvested.

    (b)    <u>Cause Defined</u>. For purposes of this Agreement, "Cause" shall mean, as determined by the Board of Directors of the Company, (i) deliberate or intentional failure, in a continuing or repeated manner, by the Optionee to substantially perform the material duties of Optionee's employment (other than due to Disability), (ii) material breach or threatened material breach by the Optionee of the covenants contained in Section 9, (iii) deliberate or intentional engagement by the Optionee in conduct which is materially detrimental to the reputation, goodwill, business or operations or the Company or any of its subsidiaries, (iv) willful fraud or material dishonesty by the Optionee in connection with the performance of the duties of the Optionee or (v) conviction or plea of *nolo contendere* by the Optionee to a felony or a misdemeanor involving moral turpitude.

    (c)    <u>Exercisability</u>. The Option shall be exercisable only to the extent that the Optionee is vested in the Option pursuant to Section 3 and the Option is in effect on the date the Optionee ceases to be an employee of or consultant to the Company.

5.    <u>Manner of Exercise of Option</u>.

    (a)    To the extent that the right to exercise the Option is vested and is in effect, the Option may be exercised in full or in part by giving written notice to the Company stating the number of Shares to be acquired pursuant to the Option and accompanied by payment in full for such Shares. Payment must be either wholly in cash or by check payable to the order of the

Company. Upon such exercise, delivery of a certificate for paid-up, non-assessable Shares shall be made at the principal office of the Company to the person exercising the Option.

(b) The Company shall at all times during the term of the Option reserve and keep available such number of shares of its Common Stock as will be sufficient to satisfy the requirements of the Option. The Optionee shall not have any of the rights of a stockholder of the Company in respect of the Shares until one or more certificates for such Shares shall be delivered to him or her upon the due exercise of the Option.

6. Non-Transferability. The right of the Optionee to exercise the Option shall not be assignable or transferable by the Optionee otherwise than by will or the laws of descent and distribution. The Option may be exercised during the lifetime of the Optionee only by him or her. The Option shall be null and void and without effect upon the bankruptcy of the Optionee or upon any attempted assignment or transfer, including without limitation any purported assignment, whether voluntary or by operation of law, pledge, hypothecation or other disposition contrary to the provisions hereof, or levy of execution, attachment, trustee process or similar process, whether legal or equitable, upon the Option.

7. Representation Letter and Investment Legend.

(a) In the event that for any reason the Shares to be issued upon exercise of the Option shall not be effectively registered under the Securities Act of 1933, as amended (the "1933 Act"), upon any date on which the Option is exercised in whole or in part, the person exercising the Option shall give a written representation to the Company in the form attached hereto as Exhibit A and the Company shall place an "investment legend," as described in Exhibit A, upon any certificate for the Shares issued by reason of such exercise.

(b) The Company shall be under no obligation to cause a registration statement or a post-effective amendment to any registration statement to be prepared for the purposes of covering the issue of Shares.

8. Recapitalizations, Reorganizations and the Like. Adjustments and other matters relating to recapitalizations, reorganizations and the like shall be made and determined in accordance with Section 11 of the Plan, as is in effect on the date of this Agreement.

9. No Special Rights; Non-Competition.

(a) Nothing contained in this Agreement shall be construed or deemed by any person under any circumstances to bind the Company to continue the employment or consulting relationship of the Optionee for the period within which this Option may be exercised, nor shall this Agreement be construed to create any duty of the Company or any of its affiliates or any of its other shareholders to the Optionee, or any duty of the Optionee to the Company or any of its affiliates or other shareholders, comparable to the duties which partners or joint venturers may owe to each other. However, during the period that the Optionee provides employment or consulting services to the Company, the Optionee shall render diligently and faithfully the services which are assigned to the Optionee from time to time by the Board of Directors or by the executive officers of the Company. The Optionee shall at no time take any action which directly or indirectly would be inconsistent with the best interests of the Company.

(b) In consideration of the Company's grant of the Option and issuance of Shares to the Optionee upon exercise thereof in accordance with the provisions hereof, and in further consideration of and as a condition to the Optionee's continued engagement as an employee or a consultant by the Company, the Optionee agrees that during the period of such Optionee's employment or consulting service to the Company, the Optionee will not, directly or indirectly, alone or as a partner, officer, director, employee, consultant, agent, independent contractor or stockholder of any company or business organization, engage in any business activity which is directly or indirectly in competition with the products or services being marketed, sold or otherwise provided by the Company or which is directly or indirectly materially detrimental to the Company; provided, however, that the record or beneficial ownership by the Optionee of 5% or less of the outstanding publicly traded capital stock of any such company shall not be deemed to be in violation of this Section 9(b), provided that the Optionee has no other relationship with such company.

10. Withholding Taxes. Whenever Shares are to be issued upon exercise of this Option, or transfers made under Section 6 or Section 14 hereof, as a condition thereto, the Company shall require the Optionee to remit to the Company an amount sufficient to satisfy all Federal, state and local withholding tax requirements. The Company shall have the right to withhold (or to cause one of the Company's subsidiaries to withhold) from compensation otherwise payable to the Optionee, an amount sufficient to satisfy all federal, state and local withholding tax requirements prior to the issuance of such Shares and the delivery of any certificate or certificates for such Shares or the payment of any consideration specified in Section 11 of the Plan, and from time to time thereafter as a result of any reason whatsoever. The Optionee acknowledges that the Company may issue a Form W-2, W-2c, 1099 or substitute therefor, as appropriate, to the Optionee with respect to any income recognized by the Optionee upon any exercise of all or part of this Option.

11. Amendment and Waiver. This Agreement may be amended, modified or supplemented, and waivers or consents to departures from the provisions hereof may be given, provided that the same are in writing and signed by the parties.

12. Governing Law. This Agreement shall be governed by, and construed and enforced in accordance with, the general corporation laws of the State of Delaware as to matters within the scope thereof and, as to all other matters, shall be governed by and construed and enforced in accordance with, the internal laws of the Commonwealth of Massachusetts without regard to principles of conflicts of laws.

13. Notices. Any notices or other communications required to be given hereunder shall be given by hand delivery or by certified or registered mail, return receipt requested, with all fees prepaid and addressed, if to the Company, to it at 72 Sharp Street, Hingham, MA 02043, Attn: Chief Financial Officer, and if to Optionee, to him or her at the address set forth in the signature page hereto, or to such other address as either party may specify in writing from time to time.

14. Stock Transfer Restrictions. Prior to the effective date of a registration statement under the 1933 Act covering any shares of the Company's Common Stock and until such time as the Company shall have effected a public offering of Common Stock, the Optionee may not sell,

assign, transfer, exchange, encumber or otherwise dispose of any shares of Common Stock issued pursuant to exercise of this Option (the "Option Shares") or any interest in such Option Shares now held or hereafter acquired by Optionee (each a "transfer") without compliance with the provisions hereof:

    (a)    Prior to any such transfer, the Optionee must give written notice thereof to the Company identifying the proposed transferee, the purchase price, if any, and terms of the proposed transaction, and offering such Option Shares to the Company for purchase by it at the same price and on the same terms. Such offer shall be in writing and mailed, postage prepaid, or delivered to the Company at its principal office;

    (b)    The Company shall have thirty (30) days after actual receipt of such offer to notify the Optionee in writing of its intention to purchase all or any part of the Option Shares. If the Company elects to repurchase all or any part of the Option Shares, the Optionee shall deliver such Option Shares, free of all encumbrances, within thirty (30) days of the date of acceptance of the offer to sell, against payment therefor at the same price and according to the same terms as were offered by the proposed transferee. If any offer has not been accepted by the Company as to any or all offered Option Shares within the time specified in this Section 14(b), then the Optionee shall have sixty (60) days within which he or she may transfer the Option Shares as to which the offer shall not have been accepted, subject to the restrictions imposed by this Section 14(b), to the proposed transferee at the same price and according to the same terms as the Optionee previously notified the Company.

    (c)    As long as any shares of Common Stock are subject to the foregoing restrictions on transfer, the purchaser of such Option Shares sold on execution or by order of any court shall within ninety (90) days after such sale, and any executor, administrator, legatees or heirs of the Optionee's estate, or any trustee in bankruptcy, receiver or other officer or legal representative appointed by any court in whom title to any of such Option Shares shall have vested either by operation of law or otherwise, shall within ninety (90) days after appointment, offer all of such Option Shares for sale to the Company upon the same terms and conditions, if any, of any proposed transaction with any proposed transferee as provided in this Section 14. Such Option Shares shall remain subject to the provisions of this Section 14.

    (d)    If any transfer of Option Shares is made or attempted in violation of the foregoing restrictions, or if the Option Shares are not offered to the Company as required hereby, the Company shall have the right to purchase such Option Shares from the owner thereof or his transferee at any time before or after the transfer. In addition to any other legal or equitable remedies which it may have, the Company may enforce its rights by actions for specific performance (to the extent permitted by law) and may refuse to recognize any transferee as one of its stockholders for any purpose, including, without limitation, for purposes of dividend and voting rights, until all applicable provisions hereof have been complied with.

    (e)    If an Optionee becomes obligated to sell any Option Shares to the Company under this Agreement and fails to deliver such Option Shares in accordance with the terms of this Agreement, the Company may, at its option, in addition to all other remedies it may have, send to the defaulting Optionee the purchase price for such Option Shares as is herein specified. Thereupon, the Company, upon written notice to the defaulting Optionee, (a) shall

cancel on its books the certificate or certificates representing the Option Shares to be sold and (b) shall issue, in lieu thereof, in the name of the Company, a new certificate or certificates representing such Option Shares, and thereupon all of the defaulting Optionee's rights in and to such Option Shares shall terminate.

15. <u>Share Repurchase Option For Termination For Cause</u>.

(a) <u>Share Repurchase Option</u>. In the event the Optionee's employment with the Company is terminated for Cause the Company shall have the right to repurchase any or all of the Option Shares under the terms and subject to the conditions set forth in this Section 15 (the "<u>Cause Share Repurchase Option</u>").

(b) <u>Exercise of Cause Share Repurchase Option</u>. The Company may exercise the Cause Share Repurchase Option by written notice to the Optionee within six (6) months after such termination of employment (or exercise of the Option, if later). If the Company fails to give notice within such six (6) month period, the Cause Share Repurchase Option shall terminate unless the Company and the Optionee have extended the time for the exercise of the Cause Share Repurchase Option.

(c) <u>Payment for Option Shares and Return of Shares</u>. Payment by the Company to the Optionee shall be made in cash within thirty (30) days after the date of the mailing of the written notice of exercise of the Cause Share Repurchase Option. For purposes of the foregoing, cancellation of any indebtedness of the Optionee to the Company or any of its subsidiaries shall be treated as payment to the Optionee in cash to the extent of the unpaid principal and any accrued interest canceled. The purchase price per Option Share being repurchased by the Company shall be an amount equal to the Optionee's original cost per Option Share (the "<u>Repurchase Price</u>"). The Option Shares being repurchased shall be delivered to the Company by the Optionee at the same time as the delivery of the Repurchase Price to the Optionee.

(d) <u>Ownership Change</u>. Any and all new, substituted or additional securities or other property to which the Optionee is entitled by reason of his or her ownership of Option Shares shall be immediately subject to the Cause Share Repurchase Option and included in the term "Option Shares" for all purposes of the Cause Share Repurchase Option with the same force and effect. While the aggregate Repurchase Price shall remain the same after such ownership change, the Repurchase Price per Option Share upon exercise of the Cause Share Repurchase Option following such ownership change shall be appropriately adjusted.

16. <u>Right to Compel Sale</u>. In the event that the one or more of the stockholders of the Company shall propose to undertake a sale of capital stock of the Company in which any individual, entity or group acquires in a single transaction or series of related transactions beneficial ownership of at least fifty one percent (51%) of either (i) the then-outstanding shares of Common Stock (determined on an as-converted and fully diluted basis) or combined voting power of the then-outstanding securities of the Company entitled to vote generally in the election of directors (a "Proposed Transaction"), then the Optionee shall, if requested in writing by such stockholder(s), sell all of his or her Shares in such transaction at the same price, on the same general terms and conditions and for the same consideration as are applicable to such

stockholder(s). Such written notice of any Proposed Transaction shall be received by Optionee at least twenty (20) days prior to the date on which such transaction is anticipated to be consummated, and shall include the price, the general terms and conditions and the consideration. In such event, the Optionee shall deliver the certificates (accompanied by duly executed stock powers or other instruments of transfer duly endorsed in blank) representing the Shares to such stockholder(s) or to an agent designated by such stockholder(s), for the purpose of effectuating the transfer of the Shares to the purchaser and the disbursement of the proceeds of such transaction. The Optionee shall cooperate in any such transaction and shall take all necessary or desirable actions in connection with such transaction as are reasonably requested by such stockholder(s), including without limitation the execution of an agreement to effect the foregoing in form and substance reasonably satisfactory to such stockholder(s) and the other Person party to such transaction.

17.  **Lock-up of Shares**.  The Optionee agrees for a period of up to one hundred eighty (180) days from the effective date of any registration of securities of the Company (upon request of the Company or the underwriters managing any underwritten offering of the Company's securities), not to sell, make any short sale of, loan, grant any option for the purchase of, or otherwise dispose of any shares of the capital stock of the Company issued pursuant to the exercise of the Option, without the prior written consent of the Company or such underwriters, as the case may be; provided, however, that in the event that the Company or the underwriters and the Company's major stockholders have agreed in writing to a lock-up period shorter or longer than 180 days with respect to any registration of securities, then the Optionee's lock-up period shall be the same as such agreed period with respect to such registration.

eBizJets.com, Inc.

## STOCK OPTION AGREEMENT
## INCENTIVE STOCK OPTION

### Counterpart Signature Page

IN WITNESS WHEREOF, the Company has caused this Agreement to be executed and its corporate seal to be hereto affixed by its officer thereunto duly authorized, and the Optionee has hereunto set his or her hand and seal, all as of the day and year first above written.

**EBIZJETS.COM, INC.**

*[signature]*

Name: John I. Williams, Jr.
Title: Chief Executive Officer

**OPTIONEE**

Signature: *[signature]*

Name:     Donald Scollins
Address:  P.O Box 2
          Green Harbor, MA 02041

Social Security No.: 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

Number of Shares:   280,412

Exercise Price:     $0.50

Grant Date:         November 8, 2000

Vesting Commencement Date: February 2, 2000

CT01/MAYNN/165015.7

eBizJets.com, Inc.

**EXHIBIT A
TO STOCK OPTION AGREEMENT**

[DATE]

eBizJets.com, Inc.
{COMPANY ADDRESS}

Ladies and Gentlemen:

In connection with the acquisition by me of [_____] shares of common stock, $0.001 par value per share (the "Shares"), of eBizJets.com, Inc., a Delaware corporation (the "Company"), I hereby represent to the Company as follows:

(a) I hereby confirm that: (i) the Shares to be received by me will be acquired for investment only, for my own account, not as a nominee or agent and not with a view to the sale or distribution of any part thereof; and (ii) I have no current intention of selling, granting participation in or otherwise distributing the Shares. I further represent that I do not have any contract, undertaking, agreement or arrangement with any person to sell, transfer or grant participation to such person, or to any third person, with respect to any of the Shares.

(b) I understand that the Shares have not been registered under the Securities Act of 1933, as amended (the "1933 Act") on the basis that the acquisition of the Shares by me and the issuance of securities by the Company to me is exempt from registration under the 1933 Act and that the Company's reliance on such exemption is predicated on my representations set forth herein.

(c) I represent that I have, either alone or together with the assistance of a "purchaser representative" (as that term is defined in Regulation D promulgated under the 1933 Act), such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of my investment in the Company. I further represent that I am familiar with the business and financial condition, properties, operations and prospects of the Company. I further represent that I have had, prior to my acquisition of the Shares, the opportunity to ask questions of, and receive answers from, the Company concerning the terms and conditions of the issuance and to obtain information (to the extent the Company possessed such information or could acquire it without unreasonable effort or expense) necessary to verify the accuracy of any information furnished to me or to which I have had access. I am satisfied that there is no material information concerning the condition, properties, operations and prospects of the Company of which I am unaware. I have made, either alone or together with my advisors, such independent investigation of the Company as I deem to be, or my advisors deem to be, necessary or advisable in correction with this investment.

(d) I understand that the Shares may not be sold, transferred or otherwise disposed of without registration under the 1933 Act and applicable state securities laws, or an exemption therefrom, and that in the absence of an effective registration statement covering the Shares or an available exemption from registration tinder the 1933 Act or applicable state securities laws, the Shares must be held indefinitely. In particular, I acknowledge that I am aware that the Shares may not be sold pursuant to Rule 144 promulgated under the 1933 Act unless all of the conditions of that Rule are met. Among the current conditions for use of Rule 144 by certain holders is the availability to the public of current information about the Company. Such information is not now available, and the Company has no current plans to make such information available. I represent that, in the absence of an effective registration statement covering the Shares or an available exemption from registration under the 1933 Act or applicable state securities laws, I will not sell, transfer or otherwise dispose of the Shares.

(e) I represent that I (i) am capable of bearing the economic risk of holding the unregistered Shares for an indefinite period of time and have adequate means for providing for my current needs and contingencies, (ii) can afford to suffer a complete loss of my investment in the Shares, and (iii) understand and have taken cognizance of all risk factors related to the acquisition of the Shares.

(f) I understand that the acquisition of the Shares involves a high degree of risk and there is no established market for the Company's capital stock and it is not likely that any public market for such stock will develop in the near future.

(g) I represent that neither I nor anyone acting on my behalf has paid any commission or other remuneration to any person in connection with the acquisition of the Shares.

(h) Independent of the additional restrictions on the transfer of the Shares contained herein, I agree that I will not make a transfer, disposition or pledge of any of the Shares other than pursuant to an effective registration statement under the 1933 Act and applicable state securities laws, unless and until: (i) I shall have notified the Company of the proposed disposition and shall have furnished the Company with a statement of the circumstances surrounding the disposition and (ii) if requested by the Company and at my expense or at the expense of my transferee, I shall have furnished to the Company an opinion of counsel, reasonably satisfactory (as to counsel and as to substance) to the Company and its counsel, to the effect that such transfer may be made without registration of the Shares under the 1933 Act, and applicable state securities laws.

    (i)    I acknowledge that all certificates evidencing the Shares shall bear a legend in substantially the following form:

### "TRANSFER RESTRICTED"

The shares represented by this certificate have not been registered under the Securities Act of 1933 and applicable state securities laws. These shares have been acquired for investment and not with a view to distribution or resale, and may not be sold, mortgaged, pledged, hypothecated or otherwise transferred without an effective registration statement for such shares under the Securities Act of 1933 and applicable state securities laws, or an opinion of counsel satisfactory to the Company that registration is not required under such Act and applicable state securities laws.

The shares of stock represented by this certificate are subject to certain restrictions on transfer, repurchase rights and lock-up provisions as set forth in the certain Stock Option Agreement pursuant to which such shares were acquired. Such Agreement is available for inspection without charge at the office of the Secretary of the Company.

    (j)    The certificates evidencing the Shares shall also bear any legend required by any applicable state securities law.

    (k)    In addition, the Company shall make a notation regarding the restrictions on transfer of the Shares in its stock books, and the Shares shall be transferred on the books of the Company only if transferred or sold pursuant to an effective registration statement under the 1933 Act and applicable state securities laws covering such Shares or pursuant to and in compliance with the provisions of the Stock Option Agreement referenced above. A copy of this Agreement, together with any amendments thereto, shall remain on file with the Secretary of the Company and shall be available for inspection to any properly interested person without charge within five (5) days after the Company's receipt of a written request therefor.

    Very truly yours,

_____